IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LESLIE HOFMANN et al.    :
                         :
v.                       :   Civil No. WMN-10-2067
                         :
BAYSAVER TECHNOLOGIES, INC. :
et al.                   :

* * * * * * * * * * * * * * *

**MEMORANDUM**

Before the Court is Defendants' Motion for Partial Summary Judgment. ECF No. 18. The motion if fully briefed. Upon a review of the motion and the applicable case law, the Court determines that no hearing is necessary, Local Rule 105.6, and that the motion should be granted in part and denied in part.

Plaintiff Leslie Hofmann is a former employee of Defendant Baysaver Technologies, Inc. (Baysaver). A second former employee, Jessica Banner, was originally joined as a plaintiff in this action but has voluntarily dismissed her claims. See ECF Nos. 11 (Banner's motion to dismiss) and 15 (the Court's paperless order granting Banner's motion). Plaintiffs allege in the Complaint that they were subjected to sexually offensive comments and physical contact by Defendant Thomas Pank who is the owner and CEO of Defendant Baysaver.

Prior to bringing this suit, Hofmann and Banner filed a suit in this Court under the Fair Labor Standards Act and the

Maryland Wage Hour Law seeking to recover unpaid overtime wages. Hofmann v. Baysaver Technologies, Inc., Civ. No. RDB-09-1075. That case was settled and dismissed pursuant to an Agreement of Settlement and Release dated October 17, 2009 (the Release).

On July 16, 2009, which was after Plaintiffs filed their unpaid overtime suit but before they signed the Release, Plaintiffs filed with the Equal Employment Opportunity Commission (EEOC) a charge of discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. (Title VII). Hofmann alleged in the charge that not only did Pank's conduct create a hostile work environment, but that she was also forced to resign from her position because of that conduct. Pls.' Ex. 1.

Upon receiving right-to-sue letters from the EEOC, Plaintiffs filed this suit in the Circuit Court for Frederick County, Maryland, each asserting a hostile work environment claim and a constructive termination claim under Title VII, as well as a battery claim. Defendants timely removed the action to this Court. Discovery is now complete.

In the Motion for Partial Summary Judgment, Defendants raise three issues: (1) that Hofmann's battery claim is barred by the terms of the Release that arose out of the previous lawsuit; (2) that the Title VII claims should be dismissed as to Defendant Pank as there is no individual liability under Title

2

VII; and (3) that Hofmann's claim for back pay under Title VII should be limited to a three weeks of back pay. The Court will address these issues, seriatim.

The Release which Plaintiff Hofmann signed contained the following provision:

> RELEASES. Except for their pending claims under Title VII of the Civil Rights Act of 1964, as amended, and except for any claims they hereafter may have for breach of this Agreement, Hofmann and Banner do hereby remise, release and forever discharge Baysaver Technologies, Inc. and Thomas Pank, their predecessors, successors, assigns, officers, directors, employees, and agents (collectively "Releasees"), of and from all actions, suits, liens, debts, dues, trespasses, damages, injuries, sums of money and claims of any kind whatsoever, including past and present claims, and future claims which presently may be unknown, whether recoverable at law, or in equity, which against the said Releasees Hofmann and Banner ever had, now have, or may ever have, from the beginning of the world to the date hereof.

Defs.' Ex. 1, ¶ 3. The Release further states that it is to be construed and interpreted in accordance with Maryland law. Plaintiff was represented by counsel when she signed the release.

"Maryland law generally requires giving legal effect to the clear terms of a contract and bars the admission of prior or contemporaneous agreements or negotiations to vary or contradict a written contractual term." Calomiris v. Woods, 727 A.2d 358, 361 (Md. 1999). Furthermore, "when the language of the contract is plain and unambiguous there is no room for construction, and

3

a court must presume that the parties meant what they expressed. In these circumstances, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant. General Motors Acceptance Corp. v. Daniels, 492 A.2d 1306, 1310 (Md. 1985). "The question of whether a contract is ambiguous ordinarily is determined by the court as a question of law." State Highway v. Bramble, 351 Md. 226, 239, 717 A.2d 943, 949 (1998).

The Court concludes that the language of the release is unambiguous and that it clearly bars Hofmann's battery claim. The Release bars "all claims of any kind whatsoever, including past and present claims," except for her "pending claims under Title VII of the Civil Rights Act of 1964, as amended" (and any claim she might have for breach of the Release itself). Hofmann's battery claim is not a claim under Title VII. It would be difficult to be any clearer.

In opposing the motion, Hofmann is forced to rely on representations as to her "intent" at the time she entered the Release to argue that the battery claim is not barred by the Release. She contends that, because Pank's conduct that formed the basis of her Title VII claim would also support a claim for battery, the phrase "'pending claims under Title VII . . .' was intended to encompass, and could reasonably be interpreted to

4

encompass, those claims which arise out of the allegations of the Title VII claims before the EEOC." Opp'n at 3 (emphasis added); see also id. ("[I]t was the intent of the Plaintiff to settle her overtime claim by giving a release which did not preclude her right to bring suit for those actions of Pank which were alleged in the EEOC complaint.") (emphasis added). By describing her "intent" using words other than those words actually included in the Release, Plaintiff implicitly acknowledges that the Release does not say what she now asserts she intended it to say. Because the Court is bound to apply what the Release actually states, and not what might have been intended, the Court finds Hofmann's battery claim is barred.

On the issue of Pank's individual liability under Title VII, Hofmann concedes, reluctantly, that under Fourth Circuit precedent, there is no individual liability under Title VII. See Lissau v. Southern Food Servs., Inc., 159 F.3d 177, 181 (4th Cir. 1998). Because the battery claims will be dismissed and as Pank cannot be held liable under the remaining Title VII claims, Pank will be dismissed as a defendant.

Finally, Baysaver argues that, should Hofmann be able to prove that she was constructively discharged from her position at Baysaver, any claim for backpay should be limited to a period from February 25, 2009, the date on which she resigned from her employment, to March 18, 2009, the date on which, according to

5

Baysaver, her position would have been eliminated for reasons unrelated to the alleged discrimination. Baysaver explains that Hofmann's primary job duties were to provide price quotes for Baysaver products, to arrange for shipping of those products and to perform other customer service functions. In September 2008, Baysaver entered into an agreement with an outside contractor, ADS, to have ADS perform those duties. At the time that Hofmann resigned, Baysaver was near the end of the process of transitioning those functions to ADS. That transition was completed by March 18, 2009. Baysaver also notes that no one was hired to replace Hofmann after she resigned.

In employment discrimination cases, "the goal of back pay is to make the victim of discrimination whole and restore him to the position that he would have occupied in the absence of unlawful discrimination." Blackburn v. Martin, 982 F.2d 125, 129 (4th Cir. 1992). Accordingly, a person who is discriminatorily discharged "should only recover damages for the period of time he would have worked but for the wrongful termination; he should not recover damages for the time after which his employment would have ended for a nondiscriminatory reason." Id. Baysaver contends that any award of back pay must end as of March 18, 2009, the date on which ADS would have completely taken over Hofmann's duties.

In opposing this aspect of Baysaver's motion, Hofmann offers her own affidavit in which she attempts to provide three factual bases to support her contention that her position would have extended beyond March 18, 2009. First, she asserts in her opposition that she performed "other important duties" beyond those connected with the duties to be transferred to ADS. Opp'n at 5 (citing Hofmann Aff. ¶ 3). The duties listed in her affidavit, however, are all consistent with duties that would be part of the transition to ADS. Second, she references a conversation with one of her supervisors that took place on the date that she resigned and in which that supervisor relayed that Pank wanted Hofmann to come back to work. Hofmann Aff. ¶ 4. That request, however, is perfectly consistent with a desire on the part of Pank for a continued smooth transition of duties from Hofmann to ADS and implies nothing concerning the time period after that transition was completed.

Hofmann's third assertion, however, saves her claim for additional back pay, at least at this stage of the litigation. Hofmann states that, "in late December 2008 and January 2009, I had numerous conversations with Tom Pank about my job status given the ADS/Baysaver business plan. I was assured that if anything was going to happen to me, it wouldn't be for at least a year." Id. ¶ 5. While Hofmann acknowledges that this comment does not give rise to any binding contract, it does give rise to

7

an inference that Pank intended Hofmann's employment to extend beyond March 18, 2009.

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed, and all justifiable inferences are to be drawn in her favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,255 (1986). While Pank may have never made this statement or he may have made it only to keep Hofmann working through the transition, one inference could be that he said it and meant it. Thus, Hofmann has created a genuine dispute as to a material fact and summary judgment is not appropriate as to the limitation on Hofmann's potential award of back pay.

A separate order will issue.

_____/s/_____
William M. Nickerson
Senior United States District Judge


DATED: March 15, 2011